IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MIKE YELLEN, | ) | CIV. NO. 14-00134 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING STATE OF |
| | ) | HAWAII AND GOVERNOR |
| vs. | ) | ABERCROMBIE'S MOTION TO |
| | ) | DISMISS, DOC. NO. 9 |
| UNITED STATES OF AMERICA; | ) | |
| STATE OF HAWAII; NEIL | ) | |
| ABERCROMBIE; JANE/JOHN | ) | |
| DOES 1-1000; PRESIDENT | ) | |
| BARACK OBAMA; UNITED | ) | |
| STATES MILITARY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING STATE OF HAWAII AND GOVERNOR ABERCROMBIE'S MOTION TO DISMISS, DOC. NO. 9**

**I. INTRODUCTION**

On November 15, 2013, Plaintiff Mike Yellen ("Plaintiff") filed this action against the United States, the "United States Military," United States President Barack Obama, the State of Hawaii (the "State"), and Hawaii State Governor Neil Abercrombie ("Governor Abercrombie") (collectively "Defendants"), asserting violations of the Constitution and international law committed in the overthrow of the Hawaiian monarchy in 1893 and Hawaii's subsequent annexation by the United States. Plaintiff seeks injunctive and

declaratory relief (1) declaring Defendants' actions void such that the Hawaii government is restored back to the Kingdom of Hawaii; and (2) prohibiting Defendants from selling public lands within Hawaii, which were ceded by the Republic of Hawaii to the United States upon annexation.

Currently before the court is the State's and Governor Abercrombie's ("State Defendants") Motion to Dismiss, Doc. No. 9, in which they argue, among other things,[1] that the court lacks subject matter jurisdiction because the Complaint raises the nonjusticiable political question as to the validity of Hawaii as a state of the United States. Plaintiff filed an Opposition on May 20, 2014, Doc. No. 18, and State Defendants filed a Reply on May 27, 2014, Doc. No. 19. Pursuant to Local Rule 7.2(d), the court determines this Motion without a hearing, and GRANTS State Defendants' Motion to Dismiss.

## II. **STANDARD OF REVIEW**

A motion to dismiss based on the political question doctrine raises the court's subject matter jurisdiction and is therefore properly viewed under Federal Rule of Civil Procedure 12(b)(1). *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974,

---

[1] Because the court finds that it lacks subject matter jurisdiction, the court does not address State Defendants' additional arguments for dismissal.

982 (9th Cir. 2007) (construing motion seeking dismissal on the basis that the action raised a political question as a Rule 12(b)(1) motion).

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways, "facial" or "factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "facial" attack, as is the case here, accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

### III.  ANALYSIS

State Defendants argue that this action raises a nonjusticiable political question -- *i.e.*, whether the overthrow of the Hawaiian Kingdom was wrongful such that Hawaii is not a valid state of the United States. The court agrees that it lacks subject matter jurisdiction.

Under the political question doctrine, "[t]he conduct of the foreign relations of our government is committed by the Constitution to the executive and

legislative [branches] . . . and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Corrie*, 503 F.3d at 982 (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)); *see also Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir. 1992) ("The political question doctrine serves to prevent the federal courts from intruding unduly on certain policy choices and value judgments that are constitutionally committed to Congress or the executive branch."). The court does not lack jurisdiction, however, "merely because [a] decision may have significant political overtones." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). Indeed, it is "error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962).

The "classic" political question case, *Luther v. Borden*, 48 U.S. 1 (1849), addressed claims under the Guarantee Clause of the Constitution,[2] where two rival governments disputed which was the lawful government of Rhode Island. *See also Massachusetts v. Laird*, 400 U.S. 886, 895 n.4 (1970) (discussing *Luther*). *Luther* held that "it rests with Congress," not the judiciary, "to decide what government is the established one in a State." 48 U.S. at 42. *Luther* explained:

---

[2] The Guarantee Clause directs the federal government to "guarantee to every State in this Union a Republican Form of Government," U.S. Const. Art. IV, § 4.

4

> [W]hen the senators and representatives of a State are admitted into the councils of the Union, the authority of the government under which they are appointed, as well as its republican character, is recognized by the proper constitutional authority. And its decision is binding on every other department of the government, and could not be questioned in a judicial tribunal.

*Id.*

The political question doctrine has since been applied to a number of different cases, and *Baker v. Carr*, 369 U.S. 186 (1962), identifies six independent factors, any one of which demonstrates the presence of a nonjusticiable political question:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217. Determining whether a case involves a nonjusticiable political question requires a "discriminating inquiry into the precise facts and posture of the particular case," *id.*, and an "evaluation of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to

judicial handling in light of its nature and posture in the specific case, and of the possible consequences of judicial action." *Id*. at 211-12.

The entire basis of Plaintiff's Complaint is that the overthrow of the Hawaii Kingdom and Hawaii's annexation to the United States violated the United States Constitution and international law such that this court should declare these acts void and restore the Kingdom of Hawaii. These issues are squarely non-justiciable political questions -- as in *Luther*, "it rests with Congress," not the judiciary, to decide the governance of Hawaii, *see Luther*, 48 U.S. at 42, and both the Supreme Court and the Ninth Circuit have already determined, in a number of other contexts, that issues of sovereignty and/or recognition of foreign entities are not for the judiciary to determine. *See Baker*, 369 U.S. at 212 (stating that "recognition of foreign governments . . . strongly defies judicial treatment . . . and the judiciary ordinarily follows the executive as to which nation has sovereignty over disputed territory"); *Jones v. United States*, 137 U.S. 202, 212 (1890) ("Who is the sovereign, de jure or de facto, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government."); *Wang v. Masaitis*, 416 F.3d 992, 995 (9th Cir. 2005) ("China's sovereignty over Hong Kong (and by corollary Hong

Kong's sub-sovereign status) has been resolved by the executive branch, and we do not question that judgment."); *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1275-76 (9th Cir. 2004) ("If the question before us were whether a remedy would lie against Congress to compel tribal recognition, the answer would be readily apparent . . . . A suit that sought to direct Congress to federally recognize an Indian tribe would be non-justiciable as a political question.").

And cases presented with this same issue -- the constitutionality of Hawaii's annexation -- have persuasively explained that a number *Baker* factors apply to this issue. For example, in *Sai v. Clinton*, 778 F. Supp. 2d 1 (D.D.C. 2011), *aff'd sub. nom.*, *Sai v. Obama*, 2011 WL 4917030 (D.C. Cir. Sept. 26, 2011), the plaintiff sought a declaration that his Hawaii theft conviction violated federal and international law because Hawaii is not a valid state. *Id.* at 2-3. Rejecting this argument, *Sai* explained:

> Plaintiff's lawsuit challenges the United States's recognition of the Republic of Hawaii as a sovereign entity and the United States's exercise of authority over Hawaii following annexation. However, "[t]he conduct of the foreign relations of our Government is committed by the Constitution to the Executive and Legislative -- 'the political' -- Departments of the Government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918). In addition, the Constitution vests Congress with the "Power to dispose of and make all needful Rules

> and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const., Art. IV, § 3, cl. 2. Therefore, there is a textually demonstrable constitutional commitment of these issues to the political branches. Furthermore, it would be impossible for this Court to grant the relief requested by Plaintiff without disturbing a judgment of the legislative and executive branches that has remained untouched by the federal courts for over a century. Since its annexation in 1898 and admission to the Union as a State in 1959, Hawaii has been firmly established as part of the United States. The passage of time and the significance of the issue of sovereignty present an unusual need for unquestioning adherence to a political decision already made.

*Id.* at 6-7.

Similarly, in *Williams v. United States*, 2008 WL 5225870 (D. Haw. Dec. 15, 2008), United States District Chief Judge Susan Oki Mollway determined the court lacked jurisdiction over an inmate's civil rights claims challenging the legality of the overthrow of the Kingdom of Hawaii and Hawaii's admission as a state to the United States, explaining:

> Plaintiff's claims raise nonjusticiable political questions because they involve matters that have been constitutionally committed to Congress. Under Article IV, Section 3 of the Constitution, "[n]ew States may be admitted by the Congress into this Union[.]" U.S. Const. art. IV, § 3. By an act of Congress, Hawaii was admitted to the Union in 1959. This court, therefore, lacks jurisdiction to decide any issue regarding the legality of Hawaii's statehood including the lawfulness of events leading to statehood.

*Id.* at \*3; *See also Algal Partners, L..P. v. Santos*, 2014 WL 1653084, at \*2-3 (D. Haw. Apr. 23, 2014) (Kobayashi, J.) (adopting reasoning in *Williams* to decline jurisdiction over assertion that "the Hawaiian Kingdom continues to exist and is under a prolonged and illegal occupation by the United States"). The court joins these cases finding that this court lacks jurisdiction to address claims challenging the legality of Hawaii's annexation.

In opposition, Plaintiff argues that the political question doctrine does not apply to this action given that numerous cases have addressed the annexation of Hawaii, and the application of United States laws to U.S. territories generally. *See* Doc. No. 18, Pl.'s Opp'n at 3-4. Plaintiff confuses cases raising the validity of Hawaii's annexation (such as in *Sai* and *Williams*), with cases in which Hawaii's annexation is not itself challenged but instead merely part of the historical background of the case. *See, e.g.*, *Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 172-73 (2009) (holding that the Apology Resolution did not strip Hawaii of its sovereign authority to alienate the lands the United States held in absolute fee and granted to the State upon its admission to the Union); *Rice v. Cayetano*, 528 U.S. 495, 505 (2000) (explaining history of Hawaii as background in determinng that limiting voting for elected Office of Hawaiian Affairs trustees to Native Hawaiians violated the Fifteenth Amendment); *Doe v. Kamehameha Sch./Bernice*

9

*Pauahi Bishop Estate*, 470 F.3d 827, 831 (9th Cir. 2006) (discussing history of Hawaii as background for determining that private, non-profit school that receives no federal funds did not violate 42 U.S.C. § 1981 in preferring Native Hawaiians in its admissions policy).

For example, *Arakaki v. Lingle*, 477 F.3d 1048 (9th Cir. 2007), rejected that the political question doctrine applied to an action challenging on equal protection grounds various state programs which gave preferential treatment to persons of Hawaiian ancestry. *Arakaki* explained: "Nothing in the claims Plaintiffs have asserted or the remedy they seek invites the district court to exercise powers reserved to Congress or to the President. The district court has not been asked to declare tribal status where Congress has declined." *Id.* at 1068; *see also Wang*, 416 F.3d at 995 ("China's sovereignty over Hong Kong (and by corollary Hong Kong's subsovereign status) has been resolved by the executive branch, and we do not question that judgment. However, this court may examine the resulting status of Hong Kong, and decide whether the Treaty Clause applies to Hong Kong as a constitutionally cognizable treaty party."). In comparison to *Arakaki* and the cases cited by Plaintiff, the entire basis of this action is for the court to declare Hawaii's annexation null and void, which is a power not vested with the judiciary.

In sum, the court easily concludes that this action presents a nonjusticiable political question on which this court lacks jurisdiction. The court therefore GRANTS State Defendants' Motion to Dismiss. Because subject matter jurisdiction is an issue the court must raise sua sponte, *see Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1036 (9th Cir. 2013), *and* Fed. R. Civ. P. 12(h)(3), and because this action presents a nonjusticiable political question as to all Defendants, this dismissal is as to all Defendants.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS State Defendants' Motion to Dismiss, and dismisses this action as to all Defendants. The Clerk of Court is directed to close this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 4, 2014.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Yellen v. United States et al.*, Civ. No. 14-00134 JMS-BMK, Order Granting State of Hawaii and Governor Abercrombie's Motion to Dismiss, Doc. No. 9